# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**WALTER DUANE WHITE,**

    **Plaintiff,**

**v.**                                       **CIVIL ACTION NO. 2:07cv15**
                                                           (Judge Maxwell)

**WARDEN JOYCE FRANCIS;**
**VALORIE RAPPOLD, AW Operation;**
**KAREN LAMBRIGHT, Health Service Administrator;**
**DR. E. MACE, F.C.I. Physician;**
**MARK DIV, Physician Assistant;**
**ELIZABETH MASTELLER-BORAM, Physician Assistant;**
**R. SPEARS, Food Service Administrator;**
**K. McCORD, Religious Service Coordinator;**
**I. BRANNON, Medical Records-Medical Trip Coordinator;**
**CECIL NICHOLS, Associate Warden Programs,**

    **Defendants.**

## REPORT AND RECOMMENDATION

### I. Procedural History

      The pro se plaintiff initiated this case on February 14, 2007, by filing a civil rights complaint against the above-named defendants.[1] On February 28, 2007, the plaintiff was granted permission to proceed as a pauper. The plaintiff paid his initial partial filing fee on May 15, 2007.

---

[1] The plaintiff's complaint originally named as additional defendants: the United States of America; Department of Justice; Federal Bureau of Prisons; and Federal Correctional Institution-Gilmer. On October 16, 2007, the plaintiff was granted leave to dismiss those defendants. In addition, on May 17, 2007, the plaintiff amended his complaint to add Cecil Nichols as a defendant.

On April 10, 2008, the undersigned conducted a preliminary review of the file and determined that summary dismissal was not appropriate at that time. Summonses were issued that same day.

On August 29, 2008, the defendants filed a Motion to Dismiss or, in the alternative, Motion for Summary Judgment with a memorandum in support. A Roseboro Notice was issued on September 3, 2008. On September 30, 2008, the plaintiff filed a "Rebuttal to Opposing Counsel's Accusations", and a "Supplemental Reply to Defendants [sic] Counsel's Response to Complaint.

## II. The Complaint

The plaintiff, is a federal inmate who is currently incarcerated at USP Canaan which is located in Waymart, Pennsylvania. However, he was previously incarcerated at FCI Gilmer located in Glenville, West Virginia. The plaintiff filed his complaint against the above-named defendants pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), a case in which the Supreme Court created a counterpart to 42 U.S.C. §1983 and authorized suits against federal employees in their individual capacities. In his complaint, the plaintiff alleges that the defendants acted with deliberate indifference to his serious medical needs while he was incarcerated at FCI Gilmer. Specifically, the plaintiff alleges that: (1) he was not provided proper diabetic shoes; (2) he failed to receive treatment for his Hepatitis C; (3) the Utilization Review Committee ("UDC") failed to refer him to a specialist; (4) he was not provided a diabetic diet; (5) he was not provided treatment for a rash or atopic dermatitis; (6) he was not able to see the psychologist because of short staffing; (7) defendant Mastellar-Boram's attitude was unprofessional when he informed her the antibiotic she had provided him caused heartburn; (8) defendant Anderson failed to timely diagnose and treat his prostatitis; (9) defendant Dib gave him a syringe full of air rather than insulin; and (10) he was not given his insulin properly. In his amended complaint, the plaintiff alleges

that defendant Nichols' action resulted in him not receiving information on infectious diseases. As relief, the plaintiff seeks $3,000,000 in compensatory damages and punitive damages.

### III. The Answer

For their answer, the defendants have filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment. As support therefore, the defendants assert the following:

    A. The plaintiff failed to exhaust his administrative remedies regarding his allegations regarding (1) diabetic shoes; (2) hepatitis treatment; (3) the inactions of the URC; (4) diabetic diet; (5) treatment of his skin condition; and information on infectious diseases.

    B. The plaintiff's allegation that defendant Masteller-Boram exhibited an unprofessional attitude fails to state a constitutional claim;

    C. The plaintiff's allegation that he did not receive appropriate treatment for his prostatitis fails to state a claim;

    D. Defendant Dib is a U.S. Public Health Service Employee and is entitled to absolute immunity;

    E. Respondeat Superior is inapplicable in a Bivens action;

    G. The plaintiff cannot establish Supervisory Liability; and

    H. The defendants are entitled to qualified immunity.

### IV. Standard of Review

**A. Motion to Dismiss**

In ruling on a motion to dismiss the Court must accept as true all well-pleaded factual allegations. Walker v. True, 399 F.3d 315 (4th Cir. 2005). Furthermore, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear, as a matter of law, that no relief could be granted under any set of facts that could be proved consistent with the

allegations of the complaint. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 4506 (1957).

**B. Summary Judgment**

Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. liberty lobby, Inc., 477 U.S. 242, 248 *1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of

evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita at 587 (citation omitted).

**V. Analysis**

**A. Exhaustion of Administrative Remedies**

A Bivens action like an action under 42 U.S.C. §1983, is subject to exhaustion of administrative remedies as required by the Prison Litigation Reform Act (PLRA). Porter v. Nussle, 534 U.S. 516, 524 (2002). Under the PLRA, a prisoner bringing an action "with respect to prison conditions" under 42 U.S.C. §1983 must first exhaust all available administrative remedies. 42 U.S.C. §1997e. Exhaustion as provided in §1997e(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). While the phrase "with respect to prison conditions" is not defined in 42 U.S.C. §1997e, the Supreme Court has determined that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516 (2002).[2]

---

[2] In Porter, an inmate sued the correctional officers who had severely beaten him. The inmate alleged that the correctional officers "placed him against a wall and struck him with their hands, kneed him in the back, [and] pulled his hair." Porter, 534 U.S. at 520.

5

Moreover, exhaustion is even required when the relief the prisoner seeks, such as monetary damages, is not available. Booth, 532 U.S. at 741.

The United States Supreme Court has held that proper exhaustion of administrative remedies is necessary, thus precluding inmates from filing untimely or otherwise procedurally defective administrative grievances or appeals and then pursuing a lawsuit alleging the same conduct raised in the grievance. See Woodford v. Ngo, 126 S.Ct. 2378 (2006). In Woodford, the United States Supreme Court clarified that the PLRA exhaustion requirement requires proper exhaustion. Id. at 2382. The Court noted that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 2386. The Court found that requiring proper exhaustion fits with the scheme of the PLRA, which serves three main goals: (1) eliminating unwarranted federal court interference with the administration of prisons; (2) "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits." Id. at 2388. As the Court concluded, "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance." Id.

The BOP provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). If the prisoner achieves no satisfaction informally, he must file a written complaint with the warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the Warden's response, he may appeal to the regional director of the Federal Bureau of Prisons (BP-10) within 20 calendar days of

the Warden's response. Finally, if the prisoner has received no satisfaction, he may appeal to the office of the General Counsel (BP-11) within 30 calendar days of the date the Regional Director signed the response. An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. 28 C.F.R. § 542.10-542.15; Gibbs v. Bureau of Prison Office, FCI, 986 F.Supp. 941, 943 (D.Md. 1997).

The records supplied by the defendants establish that the plaintiff has exhausted his administrative remedies regarding his claims that defendant Masteller-Boram treated him unprofessionally; there was delay in treating and diagnosing his pancreatitis; defendant Dib gave him a syringe full of air; and he was not given his insulin properly. (Doc. 83, pp. 1-2). However, the plaintiff did not file any administrative remedies regarding soft-soled or diabetic shoes. (Doc. 83, p.2). According, that claim must be dismissed. In addition, the plaintiff failed to file any administrative remedies regarding his Hepatitis C before filing this action.[3] (Doc. 83. p.2). Therefore, because the plaintiff failed to exhaust his administrative remedies on this issue **before** filing his complaint, this allegation must be dismissed in accordance with the PLRA. Furthermore, although the plaintiff alleges that defendants Francis, Lambright and Spears refused to implement a diabetic diet while he was at FCI Gilmer, the plaintiff failed to fully exhaust his administrative remedies on this issue **before** filing his complaint with this Court. Therefore, this claim must be

---

[3] The plaintiff filed his complaint on February 14, 2007. The plaintiff filed Remedy ID No. 462995-F1 on August 15, 2007, complaining he was not receiving proper medical care for his hepatitis C and requesting a liver biopsy. (Doc. 83-2, pp.3 & 14). The plaintiff also filed Remedy ID No. 474673-F1 on December 3, 2007, complaining he had not received a liver biopsy. (Doc. 83-2, pp. 6 & 22).

dismissed, as well.[4] In addition, the plaintiff's allegations that his skin condition was not timely treated must be dismissed because the plaintiff did not initiate his administrative remedy process on this issue until after he filed his complaint.[5] Finally, the plaintiff failed to file any administrative remedies regarding either his claim that he was not able to see a psychologist or that he did not receive enough information on infectious diseases.(Doc. 83, p. 3). Therefore both these claims must be dismissed, as well.

## B. Warden Joyce Francis, Valorie Rapppold, Cecil Nichols

Liability in a Bivens case is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001)(internal citations omitted). Thus, in order to establish liability in a Bivens case, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988). Some personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot

---

[4]On October 10, 2006, the plaintiff filed Remedy ID No. 429977-F1 at the institutional level complaining that FCI Gilmer did not have a diabetic diet. The remedy was denied at the institutional level on October 20, 2006. (Doc. 83, p. 22). The plaintiff appealed to the Regional Office where it was denied on February 5, 2007. (Doc. 83, p. 26). The plaintiff then appealed to the Central Office where it was rejected because he had filed to provide a copy of the regional appeal. (Doc. 83, p. 32). The plaintiff re-appealed the denial to the Central Office on February 22, 2007, and was denied on April 30, 2007. (Doc. 83, p.36).

[5]The plaintiff filed Remedy ID No. 443762-F1 on February 26, 2007, complaining he had been improperly charged a co-pay, was not receiving treatment for his rash, and did not receive a response to an informal resolution.(Doc. 83, p. 37). The plaintiff also filed Remedy ID No. 445621-F1 on March 14, 2007, complaining he was not receiving proper medical care for his skin rash. (Doc. 83, p. 39).

form the basis of a claim for a violation of a constitutional right in a Bivens case.[6]

In this case, plaintiff does not allege any personal involvement on the part of the part of any of these three defendants. Instead, it appears that plaintiff has named the defendants merely in their official capacities as the Warden Assistant Warden of Operations, and Assistant Warden of Programs at FCI Gilmer. However, a suit against government agents acting in their official capacities is considered a suit against the United States itself. See Kentucky v. Graham, 473 U.S. 159, 165 (1985) ("Official-capacity suits... 'generally present only another way of pleading an action against an entity oh which an officer is an agent.'"). Thus, remedy under Bivens is against federal officials in their individual capacities, not the federal government. Accordingly, plaintiff cannot maintain his claim against these individuals, and they should be dismissed as defendants.

## C. Elizabeth Masteller-Boram

The plaintiff alleges that defendant, Elizabeth Masteller-Boram, exhibited an unprofessional attitude when he complained that the medication she provided him for his infected toe caused him heartburn. Even if the plaintiff's allegation is true, the plaintiff has failed to state a constitutional claim. See Sires v. Berman, 834 Fed 2nd 9. 13 (1st Cir. 1987) (Petty squabble with a rude nurse is not deliberate indifference to a serious medical need); Dennison v. Prison Health Services, No. 00-266-B-S., 2002 WL 31026529*7 (D. Me. June 7, 2002) (Magistrate Judge opinion noting "Without a sufficiently serious deprivation of medical care there can be no constitutional violation; a bad

---

[6]In a Bivens case, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainwright, 802 F.2d 297, 401 (11th Cir. 1986).

attitude by a prison medical provider toward an inmate is not in and of itself actionable."); Riviera vs. Alvarado, 240 F. Supp. 2nd 136, 143 (D.P.R. 2003)("A bad attitude by a medical provider or a doctor's negligence in his choice of medications or treatment is not actionable under the 8th amendment."). Accordingly, the plaintiffs fail to state a constitutional claim against this defendant, and his claim against her should be dismissed.

**D. Mark Dib**

The plaintiff alleges that, on one occasion, defendant Dibb gave him a syringe full of air instead of insulin. The plaintiff further alleges that it was only his own due diligence in checking the syringe that prevented him from injecting himself with air.

Defendant Dibb is a Commissioned Officer in the United States Public Health Service. Title 42 U.S.C. § 233(a) provides that the exclusive civil remedy available to any individual against a commissioned officer of the U.S. Public Health Service for any actions pertaining to medical, surgical, dental or related functions, is an action pursuant to the Federal Tort Claims Act (28 U.S.C. § 2672). Section 233 (a)

> protects commissioned officers or employees of the Public Health Service from being subject to suit while performing medical and similar functions by requiring that such lawsuits be brought against the United States instead. The United States thus in effect insurers designated public health officials by standing in their place financially when they are sued for the performance of their medical duties.

Cuoco v. Moritsugu, 222 F.3d 99, 108 (2d Cir. 2000). See also, U.S. v. Smith, 499 U.S. 160, 170 n.11 (1990) (42 U.S.C. § 233 is one of several statutes passed to provide absolute immunity from suit for Government medical personnel for alleged malpractice committed within the scope of employment); Carlson v. Green, 446 U.S. 14, 20 (1980) (Congress explicitly provides in 42 U.S.C.

§ 233(a) that the FTCA is a plaintiff's sole remedy against Public Health Service employees); Apple v. Jewish Hosp. And medical Center, 570 F. Supp. 1320 (E.D.N.Y. 1983) (motion for dismissal of the action against the defendant doctor, a member of the National Health Corps. granted and the United States substituted as defendant, and case deemed a tort action). Therefore, pursuant to 42 U.S.C. § 233(a), defendant Dibb enjoys absolute immunity from personal liability for all claims arising from the medical care he provided the plaintiff, and he must be dismissed as a defendant in this action.

**E.  Deliberate Indifference**

To state a claim under the Eighth Amendment, the plaintiff must show that defendants acted with deliberate indifference to serious medical needs of a prisoner. Estelle v. Gamble, 429 U.S. 97, 104 (1976). A cognizable claim under the Eighth Amendment is not raised when the allegations reflect a mere disagreement between the inmate and a physician over the inmate's proper medical care, unless exceptional circumstances are alleged. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

To succeed on an Eighth Amendment "cruel and unusual punishment" claim, a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991). When dealing with claims of inadequate medical attention, the objective component is satisfied by a serious medical condition.

A medical condition is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir.1990), *cert. denied*, 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd

Cir.1987) *cert. denied,* 486 U.S. 1006 (1988).[7]

A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth 834 F.2d at 347. Thus, while failure to provide recommended elective knee surgery does not violate the Eighth Amendment, Green v. Manning, 692 F.Supp. 283 (S.D. Ala.1987), failure to perform elective surgery on an inmate serving a life sentence would result in permanent denial of medical treatment and would render the inmate's condition irreparable, thus violating the Eighth Amendment. Derrickson v. Keve, 390 F.Supp. 905,907 (D.Del.1975). Further, prison officials must provide reasonably prompt access to elective surgery. West v. Keve, 541 F. Supp. 534 (D. Del. 1982) (Court found that unreasonable delay occurred when surgery was recommended in October 1974 but did not occur until March 11, 1996.)

The subjective component of a "cruel and unusual punishment" claim is satisfied by showing deliberate indifference by prison officials. Wilson, 501 U.S. at 303. "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). Basically, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. A prison official is not liable if he "knew the underlying facts

---

[7] The following are examples of what does or does not constitute a serious injury. A rotator cuff injury is not a serious medical condition. Webb v. Prison Health Services, 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. Veloz v. New York, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. Brice v. Virginia Beach Correctional Center, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. Browning v. Snead, 886 F. Supp. 547 (S.D. W. Va. 1995). And, arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities. Finley v. Trent, 955 F. Supp. 642 (N.D. W.Va. 1997).

12

but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistent." Id. at 844.

The plaintiff alleges in his complaint that he began having pain in his back and difficulty voiding in August of 2005, while he was incarcerated at the Central Regional Jail. Although the symptoms eased up, he alleges he began experiencing severe urinary problems at FCI Gilmer in February, 2006. (Doc. 1, pp. 3-4). Medical records indicate that, on February 21, 2006, the plaintiff reported to Health Services, complaining of passing something in his urine. He denied any pain at that time but noted pain immediately prior to passing what appeared to be a jelly substance. The plaintiff was instructed to increase oral fluids and to return to the clinic the next day. On February 22, 2006, a urinalysis was conducted and was within normal limits. (Doc. 83-3, p. 2).

The plaintiff continued to present to Health Services with complaints of lower back pain, increase in an odor in his urine, and the passing of a jelly-like substance. As a result of these complaints, the plaintiff's medical file reveals that additional urinalysis was conducted on March 2, 2006, March 20, 2006, July 18, 2006, October 17, 2006, January 9, 2007, June 4, 2007, July 23, 2007, and October 30, 2007. Blood work was conducted on February 21, 2006, March 1, 2006, March 20, 2006, May 24, 2006, August 17, 2006, September 5, 2006, September 6, 2006, September 12, 2006, October 17, 2006, October 30, 2006, December 5, 2006, January 9, 2007, January 10, 2007, January 18, 2007, February 12, 2007, March 13, 2007, March 14, 2007, April 4, 2007, April 10, 2007, May 16, 2007, June 4, 2007, July 16, 2007, October 30, 2007, and December 27, 2007. The results of these tests reflect the plaintiff's diabetes, Hepatitis C, high cholesterol, and hypertension conditions. However, no other significant problems could be discerned based on the blood work or urinalysis. (Doc. 83-3, p.3).

On July 21, 2006, the plaintiff was diagnosed by medical staff at FCI Gilmer as having prostatitis[8] and was placed on a 90 day course of antibiotics. The plaintiff was also prescribed medication to improve his urinary flow. (Doc. 83-3, p.3).

On July 26, 2006, Dr. Mace Leibson referred the plaintiff to a urologist. The plaintiff continued to be treated and evaluated by medical staff while awaiting a consultation with a specialist. In August 2006, a urinalysis showed sentiment and uric acid crystals. Additional testing was also completed during the waiting period which included an abdominal ultrasound and a lumbar spine x-ray. (Doc. 83-3, p.3).

On February 5, 2007, the plaintiff was examined by the outside urologist. As a result of this examination, the plaintiff was diagnosed with chronic prostatitis. The plaintiff was prescribed an antibiotic and Ibuprofen. (Doc. 83-3, pp.3-4).

The plaintiff complained about the symptoms of his prostatitis a few times in March 2007 and April 2007. He was again seen by the urologist on April 23, 2007. The urologist noted that the plaintiff had been on antibiotics and Motrin and recommended adding Flomax[9] to help with his urinary flow. The plaintiff was given an ultrasound of his kidneys and bladder which was read as normal.(Doc. 83-3, p. 4).

On July 23, 2007, the plaintiff was seen by the outside urologist for a third time, who recommended that 10 milligrams of Elavil at night be prescribed for pain. This medication was provided to the plaintiff by FCI Gilmer staff. Elmiron was also recommended. However, because this

---

[8]Prostatitis is an inflammation or infection of the prostate gland.

[9]Because the plaintiff was already on a comparable drug, Doxazosin, the plaintiff was not prescribed Flomax by the medical staff at FCI Gilmer.

medication was not curative nor medically necessary, it was not prescribed. On August 24, 2007, the plaintiff's Doxazosin for his prostate was increased. The plaintiff continued to be treated and evaluated by FCI Gilmer medical staff until he was transferred to another BOP facility on January 8, 2008. (Doc. 83-3, p. 4).

Here, even if the plaintiff's prostatitis is a serious medical condition, thus satisfying the first element of an Eighth Amendment claim, the medical record cited above clearly establishes that the plaintiff received adequate medical supervision at FCI Gilmer for his prostatitis. He was closely monitored, was seen by an outside urologist, and received follow-up care. Finally, to the extent that the plaintiff may be alleging that his medical care at FCI Gilmer amounted to malpractice, ordinary medical malpractice based upon negligence in providing care does not state a claim under the Eighth Amendment. See Estelle, *supra* at 106. ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Furthermore, the large majority of cases alleging medical Eighth Amendment violations concern the denial of medical care to a prisoner rather than the provision of substandard care; "no care," rather than "bad care." See e.g., Holmes v. Sheahan, 930 F.2d 1196 (7th Cir.), cert. denied, 502 U.S. 960 (1991). Here, even if the plaintiff received "bad care," he did receive care. Accordingly, nothing in the record or in the plaintiff's complaint establishes any facts sufficient to support a finding that the defendants have been deliberately indifferent to his medical needs, and accordingly, the plaintiff's complaint as it relates to his 8th Amendment claims under Bivens should be dismissed for failure to state a claim.

### VII. Recommendation

In consideration of the foregoing, it is the undersigned's recommendation that the defendants' motion to dismiss (Doc. 81) be **GRANTED**, and the plaintiff's complaint (Doc. 1) and

15

amended complaint (Doc. 18) be **DISMISSED WITH PREJUDICE** under 28 U.S.C. §§ 1915A and 1915(e) for failure to state a claim except for his claims regarding diabetic shoes; Hepatitis C treatment; denial by the URC to refer him to an outside urologist; diabetic diet; treatment of his skin condition; and his inability to see a the psychologist which claims should be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust his administrative remedies. It is further recommend that plaintiff's Motion in Limine (Doc. 102) and Motion for an Order that Prison Officials Bring Plaintiff to Court to Testify in his Own Behalf (Doc. 103) be **DENIED AS MOOT.**

Any party may file within ten (10) days after being served with a copy of this Recommendation with the Clerk of the Court written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Robert E. Maxwell, United States District Court. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket sheet. The Clerk of the Court is further directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

DATED: December 2, 2008

    /s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE